## Watkins' Administrator v. City of Catlettsburg.

(Decided March 25, 1932.)

WAUGH & HOWERTON and MARTIN T. MORAN for appellant.

GEORGE F. GALLUP and MARTIN & SMITH for appellee.

OPINION OF THE COURT BY STANLEY, COMMISSIONER—Affirming.

In its essence, this case presents the question of whether the duty which a municipality owes to the traveling public is one of notification or fortification against danger. In its particularity, the question is whether the city of Catlettsburg owed a duty to place a barrier at the end of a street of sufficient strength to have prevented an automobile being driven off into the Ohio river by reason of which a man was drowned.

The river flows westwardly by that city. Division street, running north and south, terminates at the juncture of Front street, paralleling the river, thereby forming an elbow, which is something less than a right angle. Both streets were paved with brick. There was no kind of barrier, railing, or curbing along the bank of the river. At the end of the paving of Division street there was an earth shoulder, level with it, from two to eight feet in width and then a precipitous embankment. Ordinarily the water is some distance down from the top of the bank. On May 7, 1929, the river was at a very high stage and came within a few feet of the top of the bank at the end of the street. About noon that day C. E. Watkins, with his mother and father in his automobile, drove down Division street to see the high water, and just as he was turning to the left to go down Front street another automobile came suddenly around the corner at a rapid speed and turned to its right to go out Division street. It swung out beyond the center of the corner, and, in order to avoid a collision with it, Watkins was forced, as he testified, to turn his car quickly to the right, and it went off the end of Division street over the river bank and plunged in the water, although he applied his brakes and used every effort to stop the machine. He jumped out and his mother was rescued from the water, but his father was drowned within the automobile. The street was level and there is no claim that the grade of the street had anything to do with the accident. It is apparent that the driver had ten or twelve feet within which to

stop his car going straight ahead when he met the other machine at the corner. There is evidence tending to show that if there was in fact any other automobile involved it did not cause Watkins to change his course and that something went wrong with his machine. For the purpose of the decision, we accept, however, the plaintiff's evidence and all reasonable inferences.

The administrator of the estate of the father, A. H. Watkins, brought this suit against the city of Catlettsburg for damages, alleging negligence on its part in failing to guard the end of the street by maintaining a barrier to separate it from the abrupt descent or declivity and to prevent automobiles or other vehicles using the street from going over the bank. The case was submitted to a jury, which returned a verdict for the defendant.

It appears that the court committed an error to the plaintiff's prejudice in the instructions; but, since we conclude that the motion of the city for a directed verdict should have been sustained, we confine the opinion to that point.

Of course, there can be no negligence if there was no duty owing the plaintiff under the circumstances. With respect to the duty which a municipality owes to those using its streets, it has often been stated that that duty is to use ordinary care to warn and protect persons against injury who themselves are using ordinary care for their own safety. While the word "protect" carries the idea of preserving in safety or making absolutely safe, the sense in which it has been used in thus defining a city's duty is rather that of a synonym of "guard," "warn," or "notify." It is true that in relation to defects or obstructions in the streets themselves a responsibility may arise different from a case involving danger outside of the traveled way. The question of negligence is resolved into one of reasonably anticipated consequences, and the duty is to use such means as may be necessary to prevent those consequences. The city is required to use or employ whatever means may be necessary to make its streets reasonably safe, and the fact that barriers had been used would not excuse the city, if they were insufficient, from adopting such means as were sufficient to give warning or notice. Grider v. Jefferson Realty Co. (Ky.), 116 S. W. 691; City of Ashland v. Williams, 203 Ky. 300, 262 S. W. 273.

In Town of Elsmere v. Tanner, 158 Ky. 681, 166 S. W. 220, a sidewalk was built on an embankment about

two feet higher than the natural surface of the ground and the walk was about four inches above the surface of the embankment. A pedestrian in the nighttime stepped off the edge of the sidewalk, lost her balance, and fell down the embankment. It was held that the condition was not a hazardous one and that the city was not required to maintain a barrier at the place for the protection of persons using the walk, as the situation was obvious, and that a peremptory instruction for the town should have been given.

In City of Harrodsburg v. Abram, 138 Ky. 157, 127 S. W. 758, 759, 29 L. R. A. (N. S.) 199, a runaway horse collided with an unused fire engine left on the side of the street and so injured itself as to require its destruction. It was declared in the opinion that a city discharges its whole duty in maintaining a highway reasonably wide and reasonably safe for public travel in the ordinary way and is not bound to anticipate extraordinary exigencies, such as a runaway horse. In such an instance, it was observed had there been an excavation in the street an ordinary barricade would not have stopped the frightened horse nor would the ordinary signals of danger have availed. Says the opinion:

> "It is considered sufficient if the city authorities give timely and reasonable warning of obstructions in the highway, so that the traveling public may see and avoid the danger created."

The claims of the plaintiff in Overton's Admx. v. City of Louisvile, 221 Ky. 289, 298 S. W. 968, were not unlike this case in respect to the physical surroundings, for the street paving ended at or near a railroad track beyond which was a canal. It was contended that the decedent had driven his automobile in the night across the track and into the canal, thereby causing his death, and that this was done because of the failure of the city to maintain a barrier across the end of the street. Assuming for the purposes of the opinion that the city was negligent in failing to keep a fence or safety device there or to give some warning signal of the apparent danger, the case was decided upon the ground that there was an entire absence of evidence that the decedent had in fact driven his car into the canal. The argument and assumption of negligence were that it was the city's duty to have given notice of the condition.

Here the accident occurred in broad daylight and the driver of the automobile, as well as the decedent, his guest, were very familiar with the conditions. The danger was obvious, and the only claim of negligence is a failure to fortify rather than to notify.

Looking to the recent authorities relating to the specific duty of a municipality in respect to automibiles and declivities alongside the streets, it may be said that the same general duty exists to protect ordinary travel by the public and that the city is not obliged to make special provisions to keep the street safe for the passage of automobiles, as a different or specific class of travel. Annotations, 27 A. L. R. 937, and 36 A. L. R. 413. In some of the cases therein noted it was held, however, that the care to be used or exercised by the city must be commensurate with the increased danger to which the common use of automobiles subjects the public, and that the question as to whether a city was under a duty to maintain a barrier of sufficient strength to keep an automobile traveling at a moderate speed from going over an embankment was to be determined by the inquiry whether such a railing was one that an ordinary person would maintain at the place and that that is usually a question for the jury. When it comes to an application of that general rule, where the condition is obvious and the elements of concealment of the danger or notice thereof are not involved, it is held that there is no duty to maintain a barrier of sufficient strength to resist the force of an automobile or to prevent it from going over an embankment alongside the highway, even though at a curve, presenting a hazardous condition. City of Dallas v. Maxwell (Tex. Com. App.), 248 S. W. 667, 27 A. L. R. 927; Wessels v. Stevens County, 110 Wash. 196, 188 P. 490; Miner v. Rolling, 167 Wis. 213, 167 N. W. 242, L. R. A. 1918D, 1178; Camp v. Allegheny County, 263 Pa. 276, 106 A. 314; Dorrer v. Callicoon, 183 App. Div. 186, 170 N. Y. S. 676; Wyandot County Com'rs v. Boucher, 98 Ohio St. 263, 120 N. E. 700; Roberts v. Town of Eaton, 238 N. Y. 420, 144 N. E. 667, 36 A. L. R. 411; Best v. State, 203 App. Div. 339, 197 N. Y. S. 69, affirmed 236 N. Y. 662, 142 N. E. 325.

In Bond v. Billerica, 235 Mass. 119, 126 N. E. 281, it was held that under the duty resting upon a municipality to keep its highways reasonably safe and convenient for travel generally, including automobiles, a city was obliged to erect a barrier at a curve where

vehicles might go over an embankment into the river strong enough to prevent a small automobile from going over but not a machine of great weight; or rather that the question was for the jury whether the city had exercised reasonable diligence under such circumstances to maintain a barrier of that character. The idea was that a small passenger automobile was to be regarded as was formerly a horse-drawn vehicle—the only character of travel in use when laws imposing the general duty of care were enacted. We cannot follow the reasoning of that opinion and the distinction between a light-weight automobile and a heavy car, for the use of the streets by the one is no more common than their use by the other, and the one is not entitled to any more protection than is the other.

The conclusion of the court is that there was no duty on the part of the city of Catlettsburg, under the conditions presented in this case, to have maintained a guard or barrier. To have prevented the car going over the embankment into the river in this case would have required a wall of sufficient strength to withstand the force of the moving automobile and to have wrecked it. There was no duty to maintain such an obstruction. The city not being shown to have been negligent, it was entitled to a directed verdict.

Wherefore, the judgment is affirmed.

Whole court sitting.