## Tate v. Hall.

(Decided March 3, 1933.)

844

G. MURRAY SMITH and ROSS & ROSS for appellant.

J. P. CHENAULT and SHUMATE & SHUMATE for appellee.

OPINION OF THE COURT BY JUDGE THOMAS—Affirming.

Just after it became dark on the evening of November 4, 1931, the appellant and defendant below, W. B. Tate, while traveling north on Highway No. 25 in his automobile, collided it with the person of appellee and plaintiff below, Robert Hall, producing the injuries to his person for which he seeks compensation in damages by this action filed in the Madison circuit court. Defendant's answer denied the material averments of the petition, and alleged contributory negligence of plaintiff in another paragraph, which was denied, thus forming the issues. At the trial the jury returned a verdict in favor of plaintiff for $700, upon which the court rendered judgment and refused to set it aside on defendant's motion for a new trial, and from that order defendant prosecutes this appeal. Before classifying or considering any of the grounds argued for reversal, we conclude that a statement of the substantial facts as testified to at the trial should be made.

Plaintiff, Hall, was a farmer in Estill county, and in the year 1931 he had grown and manufactured a quantity of sorghum. His neighbor, Mitchell Webb, owned a Ford truck, and plaintiff contracted with him to carry to Cincinnati, Ohio, a truck load of sorghum to be sold on the market, for which he agreed to pay Webb $16 and furnish all gas and oil necessary to make the trip. Plaintiff accompanied Webb in his truck, and about twenty miles south of Covington, Ky., while traveling on State Highway No. 25, they sustained a puncture or blow-out in the tire of the left-hind wheel of the truck. The place was a short distance from a touring camp and from a rural garage. They managed to get the truck mostly off the improved portion of the highway on its right side, upon which they were required to and were traveling, and Hall went to the rural garage to obtain a jack for the purpose of lifting the truck, and returned with it, when he and Webb began the work to repair the damage by taking off the injured wheel and doing whatever was necessary to

make it. They had no rear lights on the truck, but they had a flash-light, which one or the other of them kept constantly burning, and it was sufficient to create a signal to one approaching from the rear. At the particular instant of the collision plaintiff had risen and was standing immediately against the left side of the truck at its rear, and just opposite the crippled wheel, when defendant with his automobile approached from the rear and struck plaintiff, producing the injuries for which he seeks compensation in this action. The attention of both plaintiff and Webb was necessarily centered upon their work of repairing the injured wheel and, according to their testimony plaintiff was only some two or three feet on the concrete highway from its right edge at the time he was struck by defendant's car, since they stated (and so proved by others) that the left-hind wheel of the truck was only about six inches on the concrete pavement on that side, although a witness for defendant, as well as he himself, testified that the truck was about one half of its width on the concrete pavement with the other half on the adjoining berm.

Defendant testified that his lights were burning; that they were new and exceptionally brilliant; that his brakes were in good order; and that he did not see the presence of Webb's truck, or plaintiff, until he was within a foot or two of them, when it was too late for him to stop or to swerve enough to the left to avoid colliding with plaintiff. He further testified that notwithstanding the new and brilliant lights on his automobile they did not enable him to see objects in front for a greater distance than forty or fifty feet ahead, although the law requires them to be sufficient to discern objects as much as two hundred feet ahead of a moving automobile. Subsection 2 of section 2739g-24 of our Statutes. He nowhere testified that he was on the lookout ahead to discover objects in front of him, and he expressly stated that he did not blow his horn or give any other character of signal of his approach. He attempted to explain the facts so testified to by him by saying that there was a curve in the highway at the point of collision which prevented him from discovering the presence of the truck or of plaintiff, or to take any other steps than those he did to prevent the accident.

But no one sustains defendant in his claim as to the curved condition of the highway at that point. On

the contrary, he had an engineer make a map of the road at that place, which he filed as a part of his testimony, and it shows that the curvature at the point of the accident is so slight as to produce no impairing effect upon the ability of one approaching from the direction defendant was traveling to see an object ahead of him equally as far as if the road had been perfectly straight. In addition thereto, every witness in the case, with the possible exception of defendant, testified that a traveler on the highway, traveling in the direction defendant was going on that occasion, could see an object in the highway at the point where the accident happened for a distance of at least 250 or 300 feet back of it. There is no complaint in the case as to the amount of recovery, but if there were the testimony adduced at the trial abundantly sustains the jury in its verdict.

The two points argued for reversal are: (1) That plaintiff was violating the provisions of section 2739g-48 of the 1930 Edition of Carroll's Kentucky Statutes at the time he was injured, and for which reason defendant's motion for a peremptory instruction should have been sustained, or that the jury should have been so told by the court in its instructions; and (2) that if mistaken in argument 1, then the proof showed such contributory negligence of plaintiff as a pedestrian as would authorize the tendered peremptory instruction in defendant's favor. A number of cases are cited by counsel for defendant in an endeavor to substantiate argument 1, supra, but we have carefully examined each of them and find that none of them fit the facts of this case. In the first place, the statute does not apply to cases where the traveling automobile becomes disabled on the highway, thereby making it impossible to avoid occupation of a part of its space, or impracticable to remove the automobile therefrom while it is being temporarily repaired. The evidence shows that such was the condition in this case, and which all of the cases relied on by counsel acknowledge and uphold. Moreover, they were cases where damages were being sought by the owner for demolishing his automobile, or for injuring someone who was responsible for the alleged violation of the Statute.

In this case, plaintiff, Hall, had nothing whatever to do with the management, operation, or control of Webb's truck, who was an independent contractor to

transport plaintiff's sorghum to Cincinnati, Ohio. Plaintiff was a mere traveler in the truck with the independent contractor and with the latter's permission. Therefore, this case is governed entirely by the law applicable to an injured pedestrian on the highway, and the statute, supra, has no application whatever to the case. The principles announced in the case of Tri-State Refining Company v. Skaggs, 223 Ky. 731, 4 S. W. (2d) 739, are peculiarly applicable. All that is required of a pedestrian on the highways of the state, as therein declared, is to exercise ordinary care for his own protection. The court so instructed the jury in this case, and it found, either that plaintiff did exercise such care on the occasion in question, or that, if he did not, then defendant was guilty of such negligence as entitled plaintiff to recover, notwithstanding any contributory negligence on his part. The instructions in this case were peculiarly applicable to the proven facts, and the jury had abundant ground upon which to found its verdict.

As we have above pointed out, defendant maintained no lookout ahead to discover obstructions in the highway or persons traveling thereon. According to the proof, which was practically unanimous on that point, he could have seen the presence of plaintiff on the edge of the highway more than two hundred feet back of him and in ample time to have stopped his car, or to have turned to the left sufficiently to avoid colliding with him. The fact that the defendant did not see plaintiff in the highway until he was in two or three feet of him is proof conclusive that he was not maintaining a lookout. It is apparent, therefore, that, according to defendant's own testimony, he either did not have his automboile equipped with sufficient lights, or he did not maintain a lookout ahead. He was traveling at a speed of twenty miles per hour, according to his testimony; but with his well-equipped brakes (as testified to by him), he could have easily stopped his automobile from the time he could have seen the presence of plaintiff on the highway long before reaching him so as to have avoided the collision, even if there had been a passing automobile so as to prevent him from going around plaintiff and the crippled truck. But there was no such obstructing obstacle in his way of safely passing the truck and plaintiff, if he had exercised the slightest care to have discovered their presence.

848

We are unable to find any error in the record, and the judgment is affirmed.