Argued May 2, affirmed June 3, 1966

# HOVIS *v.* CITY OF BURNS

415 P. 2d 29

*Wendell Gronso,* Burns, argued the cause for appellant. On the brief were Cramer & Gronso, Burns.

*Michael S. Mogan,* Burns, argued the cause and filed the brief for respondent.

Before McAllister, Chief Justice, and Perry, Sloan, Goodwin, Denecke, Holman and Lusk, Justices.

## HOLMAN, J.

This is an action for damages for emotional shock and mental anguish claimed to have been suffered by plaintiff when the defendant city disinterred the remains of her husband. The defendant operated a cemetery which served not only the city of Burns but Harney County as well. Plaintiff purchased from the city the right to have her husband's remains buried in a plot in this cemetery. The city mistakenly buried the body in the wrong plot. Subsequently, without permission from or notification to plaintiff, the city disinterred the remains and moved them to the proper

plot. The trial resulted in a verdict for plaintiff, and defendant appealed.

■ The defendant contends that the city was acting in its governmental capacity, and, therefore, was immune from tort liability. A city which operates a cemetery does so in its proprietary capacity. The following is quoted from 18 McQuillin, Municipal Corporations § 53.116 (Rev 3d ed 1963):

> "A city operating a cemetery functions in its proprietary capacity. Its liability for tortious conduct while so engaged is the same as that of a private corporation. * * * And where a municipality owns a cemetery within its limits, under lawful authority, especially where it sells lots therein for burial purposes, it must exercise the same degree of care in preventing damage to others as would be required of natural persons, and it is liable for its negligence in connection therewith."

Also see the following cases: *Spomer v. City of Grand Junction,* 144 Colo 207, 355 P2d 960 (1960); *War Memorial Hospital v. Bd. of County Comm'rs,* 73 Wyo 371, 279 P2d 472 (1955); *City of Hopkinsville v. Burchett,* 254 SW2d 333 (Ky 1953); *Dep't of Treasury v. City of Evansville,* 223 Ind 435, 60 NE2d 952 (1945); *City of Atlanta v. Rich,* 64 Ga App 193, 12 SE2d 436 (1940); *Mount Hope Cemetery Ass'n v. City of Boston,* 158 Mass 509, 33 NE 695, 35 Am Rep 515 (1893). Since the city operates the cemetery in its proprietry capacity, it is not immune from suit. ORS 30.320. *Vendrell v. School Dist. No. 26C,* 226 Or 263, 279-280, 360 P2d 282 (1961).

Defendant's next contention is that plaintiff has no cause of action for damages for mental anguish, emotional shock, indignation or dismay because of the disinterment of her husband's body. Defendant so

asserts because it claims plaintiff had no legal right to have her consent obtained before her husband's remains were moved and, in any event, there was no cause of action because no pecuniary or physical injury accompanied the emotional shock.

ORS 97.220 provides as follows:

"(1) The remains of a deceased person interred in a plot in a cemetery may be removed therefrom with the consent of the cemetery authority and written consent of the person who has the right to control the disposition of the remains of the deceased person. * * *"

ORS 97.130 gives the following right to control the disposition of decedents' remains:

"The right to control the disposition of the remains of a decedent, unless other directions have been given by him, vests in his surviving spouse, his surviving children, his surviving parents and the person in the next degree of kindred to him, in the order named."

These statutes were first enacted as §§ 7 and 4, respectively, of Oregon Laws 1947, ch 565. They have no application to a city cemetery. City cemeteries were exempted from their application by §§ 41 and 3 of the same chapter which now are, respectively, ORS 97.020 and 97.120. ORS 97.020 states that the provisions of specified statutes have no application to city cemeteries. Included is ORS 97.120 which in turn provides that "a cemetery authority shall deposit or dispose of human remains as provided by this act." In other words, all provisions of the act which relate to the disposition of human remains have no application to city cemeteries. Both ORS 97.220 and ORS 97.130 relate to the disposition of human remains. Defendant,

therefore, reasons that plaintiff has no cause of action because the statutes bestow no rights upon plaintiff as against the proprietors of a city cemetery.

■ While the statutes bestow no rights upon her, neither do they take any away. Presently the law recognizes, independent of statute, a right in a surviving spouse to recover for mental anguish caused by the unauthorized or negligent handling of the deceased. Early English law recognized no such right. The right of possession, disposition, and protection of the dead rested with the church. Jackson, The Law of Cadavers, 125-126 (2d ed 1950). Early cases in this country tended to follow the English rule. The majority rule is now to the contrary. In Jackson, supra at 178-180, the following statement is found:

"* * * In the latter situation [unlawful disinterment] the damage is almost, if not wholly, confined to that resulting from mental anguish. And as in cases of interference with a body before burial our courts have been compelled to meet and ultimately repudiate the doctrines of 'no property right' and similar ecclesiastic dogma, in allowing damage for mental suffering unaccompanied by pecuniary loss, so they must meet and repudiate the analogous English rules in disposing of claims for damages for interference with a body after interment. * * *

"Again, as in the case of interference before possession, the gravamen of the action is the invasion of the personal right of the survivor, in the one case to bury and in the other to have the remains undisturbed. The violation of the latter right should produce a concurrent right of action for the tort * * *.

"There is a cause of action to recover pecuniary damage in the owner of the fee or burial easement for improper disinterment, as there is in the contracting party before burial, and there is, as well,

an action in tort to recover damages which may be maintained by a spouse or next of kin, though not an owner of the land, whose feelings have been outraged by the desecration. * * *"

■ As to whether or not damages are recoverable for mental anguish in the absence of a physical injury, Prosser, Torts § 55, at 348-349 (3d ed 1964), makes the following statement:

"Where the defendant's negligence causes only mental disturbance, without accompanying physical injury of physical consequences, or any other independent basis for tort liability, there is still general agreement that in the ordinary case there can be no recovery. * * *

"In only two groups of special cases has there been any tendency to break away from the settled rule, and to allow recovery for mental disturbance alone. * * * The other group of cases has involved the negligent mishandling of corpses. Here the older rule denied recovery for mere negligence, without circumstances of aggravation. There are by now, however, quite a series of cases allowing recovery * * * without such circumstances of aggravation, which now are in the majority. What all of these cases appear to have in common is an especial likelihood of genuine and serious mental distress * * *."

This court has recognized the right to recover for mental anguish where no physical injury has occurred. *Hinish v. Meier and Frank Co.*, 166 Or 482, 113 P2d 438 (1941), was an action for damages for invasion of privacy. In answer to the objection that the law would not redress mental anguish alone, the court stated at page 506 as follows:

"* * * that where the wrongful act constitutes an infringement of a legal right, mental suffering may be recovered for, if it is the direct,

proximate and natural result of the wrongful act: [citations]"

■ The surviving spouse has the legal right to have the remains of the deceased undisturbed; and if mental suffering results from an unauthorized infringement of this right, a cause of action exists therefor. The following cases hold that, in the absence of statute, damages may be recovered by the surviving spouse or next of kin for the unauthorized disinterment of corpses for transfer from one grave to another: *Spomer v. City of Grand Junction,* supra; *City of Hopkinsville v. Burchett,* supra; *Resthaven Memorial Cemetery v. Volk,* 286 Ky 291, 150 SW2d 908 (1941); *Classen v. Benfer,* 144 SW2d 633 (Tex Civ App 1940); *Hamilton v. Individual Mausoleum Co.,* 149 Kan 216, 86 P2d 501 (1939); *Gostkowski v. Roman Catholic Church,* 262 NY 320, 186 NE 798 (1933); *Louisville Cemetery Ass'n v. Downs,* 241 Ky 773, 45 SW2d 5 (1931). In the *Spomer, Volk, Gostkowski,* and *Downs* cases the factual situation was identical with the present case in that the defendant had first mistakenly buried the corpse in the wrong plot. See generally, 1 Harper & James, Torts § 9.4 (1956); 22 Am Jur 2d 587, Dead Bodies § 42 (1965).

Defendant also contends that circumstances of aggravation must appear and that mere negligence is not sufficient. The above quoted statement by Dean Prosser indicates the law is otherwise.

■ Plaintiff's attorney, in his argument to the jury, asked the members of the jury to put themselves in plaintiff's position. Defendant's counsel immediately objected and asked that the statement be stricken by the court. The objection was sustained, but the court said nothing to the jury about disregarding the state-

ment. Defendant claims error. We are of the opinion that the omission could not have been prejudicial. The court sustained the objection, and the members of the jury who heard the objection and the ruling could not have failed to understand that the argument was improper and therefore that it should be disregarded.

■ Defendant next contends that the court erred by permitting plaintiff's attorney to comment in his argument that the city threw the grave marker away. It urges there is no evidence to justify such an argument. The following was the testimony of the sexton of the cemetery:

> "Q Do you recall whether or not there was such a marker on Mr. Gray's original grave?
> "A I believe there was.
>
> "Q And what—Do you recall what you did with that marker when you moved the body?
> "A I think it was thrown away, they don't keep them.
>
> "Q So that for a period of time, at least, between the time you moved the body and placed the headstone, there was no marker?
> "A No."

This was adequate evidence to justify the argument.

■ The defendant also contends it had a legal right to move the body under ORS 97.220 (2) because plaintiff had not paid for the plot in which her husband was buried. The pertinent portion of the statute provides that remains may be moved without permission if the plot is not paid for within 90 days after payment is due. The uncontradicted testimony shows that plaintiff paid defendant for burial space for the remains of her husband. The error of the city in burying the

remains in a plot other than that for which she paid avails the city nothing under the provision of the statute even if it were applicable to city cemeteries, which it is not. The contention is specious.

The judgment of the trial court is affirmed.