**Marilyn SCOTT**

v.

**ABILENE INDEPENDENT SCHOOL DISTRICT.**

**Civ. A. No. 1-74-20.**

United States District Court, N. D. Texas, Abilene Division.

March 2, 1977.

Nelson Quinn, Abilene, Tex., for plaintiff.

Stanley P. Wilson, Abilene, Tex., for defendant.

## OPINION

BREWSTER, District Judge.

Marilyn Scott, a female public school teacher in the Abilene Independent School District (District), brought this suit against the District seeking money damages[1] alleged to have resulted from her resignation pursuant to the District's written pregnancy policy which reads as follows:

"POLICY REGARDING PREGNAN-
CY OF CERTIFIED PERSONNEL

"Any certified personnel employee of the Abilene Public Schools who is expecting the birth of a child must notify her principal, director of personnel, or superintendent as soon as pregnancy is verified. The semester in which pregnancy occurs may be completed by the teacher providing she is in good health. Pregnancy preceding the opening of the school term disqualifies the teacher from the ensuing term.

"Failure of immediate notification of pregnancy shall be considered as neglect of duty and shall constitute grounds for immediate dismissal from service."

The plaintiff contends that the pregnancy policy is unconstitutional under the rule announced in *Cleveland Board of Education v. La Fleur*, 414 U.S. 632, 94 S.Ct. 791, 39 L.Ed.2d 52 (1974). The defendant claims that the *La Fleur* case is distinguishable from this one, and that the District's pregnancy policy is valid. The Court has concluded that it is unnecessary to decide this question because it lacks jurisdiction of the case.

The facts are for the most part undisputed. Most of them were stipulated in connection with the pre-trial order. The Court preferred to render judgment after a full

---

1. Unlike most cases of this type, the only matter involved is the plaintiff's claim for monetary damages. The plaintiff brings this suit only for herself, and not as a class action. No equitable relief is sought. The pregnancy rule here involved has not been in effect since August 27, 1973, so the outcome of this suit, whether it be judgment for the plaintiff or for the defendant, will not result in the repeal of an existing rule.

hearing on a non-jury trial, and some oral testimony was offered. There was no issue about the correctness of most of it.

During the period in question, school years of the District ran from the latter part of August until around the end of May of the following year. They were divided into two semesters, with the first one ending and the second one beginning about the first of February of each year. The governing body of the District was a school board elected by the voters residing in the District.

Plaintiff first went to work for the District in February, 1969, as a teacher in its Headstart Program. She was continued in that position for a year and a half, and was then employed as a full time teacher beginning with the fall semester of the 1970–71 school year. She was assigned to the Franklin Junior High School in Abilene as a teacher of English, Spanish and Journalism. At the end of that school year, her contract was renewed for the school year 1971–72. Each contract was for only one school year, and was untenured.

Plaintiff was pregnant at the beginning of the 1971–72 school year, but did not report it until early in October, 1971. She gave as her reason for the delay that the pregnancy was not confirmed by an obstetrician until a few days before that date. Following the confirmation, she conferred with her school principal for the purpose of informing him of her pregnancy and of inquiring as to the procedure. She was familiar with the District's pregnancy rule, but wanted to continue teaching beyond the end of the fall semester. She was advised that the rule could not be avoided. On October 10, 1972, she wrote a letter to the Director of Personnel of the District stating that she was expecting a child in the following April, "therefore it is necessary for me to submit this letter of resignation for the Spring semester of 1972." She taught during the remainder of the fall term ending around the first of February, 1972.

The plaintiff's child was born on April 3, 1972. She experienced no abnormal problems during the pregnancy or the childbirth.

The only discussion plaintiff ever had with any person in an executive or managerial position with the District was the above described one with her school principal in October, 1971. She made no effort to use the administrative remedies available to her under Texas statutes. She took no action whatever in protest of the pregnancy rule until she filed this suit about two and one-half years after her letter of resignation.

Plaintiff was replaced by a part-time teacher she recommended. That teacher taught during the spring semester of 1972 and all of the school year 1972–73 at the same salary plaintiff had been getting.

■ Plaintiff taught in a privately operated kindergarten in Abilene during the fall of 1972. She then accepted a high school teaching position in the Hawley Independent School District beginning with the spring semester of 1973 at about the same salary she had received as a public school teacher in Abilene. She was still holding that position at the time of the trial of this case. She testified that she was happy with the teaching job in Hawley, and had no desire to return to the Abilene school system.[2]

The plaintiff's salary as a teacher at Franklin Junior High School was $7,000.00 for the ten month school year, payable in twelve equal installments. In her amended petition, upon which the case went to trial, she prayed for the following damages:

1. $4,500.00, representing the difference between her total contractual salary for the school year 1971–72, and the $2,500.00 she received from the District for the time actually taught during the year.

2. $2,350.00, representing the difference in the amount she would have made as a

---

2. Teaching in Hawley was not inconvenient to one living in Abilene. The two towns were only about twelve miles apart, and were connected by a good divided highway. The Court has authority to take judicial notice of such matters. *600 California Corp. v. Harjean*, D.C. Tex., 284 F.Supp. 843, 854 (1968). There is also some testimony on it.

teacher in the Abilene public schools during the fall term, if her contract had been renewed for the school year 1972–73, and the amount she actually earned teaching in the privately operated kindergarten during the fall of 1972.

3. $3,000.00 as exemplary damages "because of the discriminatory law, rule or regulation that deprived her of her employment." [3]

The jurisdictional allegations in plaintiff's pleadings are somewhat vague. The original complaint alleges the following as grounds of jurisdiction:

"STATEMENT OF JURISDICTION

"The case involves a constitutional question. The complaint is basically one of rules and regulations of the Defendant School District in that such rules and regulations of the Governmental Defendant are such that there is a denial of due process of the Complaint."

The only damages sought in that complaint were $3,890.00, which was alleged to have been plaintiff's loss of salary due to her resignation in pursuance of the pregnancy rule.

The plaintiff's first amended complaint contains the following jurisdictional allegations:

"STATEMENT OF JURISDICTION

"A. The defendant School District is a local government body, which its trustees, board members or directors are elected officially by the public at large. Such trustees, board members or directors formulate rules, regulations and policies for the operation of the administration of the school system.

"B. Such rules, regulations and policies are engaged in under the color of local or state law.

"C. The Complaint is based on Section 1983 of 42 of the United States Code.

"D. The rules, regulations and/or policies of Defendant School District deprive the Complainant Scott of due process

and/or equal protection of the laws as are guaranteed by the 14th Amendment of the United States Constitution."

The parties proceeded on the basis that the Court had jurisdiction until after the trial when the Court questioned it. The defendant's answer admitted jurisdiction. The pre-trial order prepared by the parties, submitted on the same date the amended complaint was filed, stated:

"The parties to the controversy are within the jurisdiction of the Court, and the subject matter of the controversy is within the jurisdiction of the Court if a constitutional question is in fact shown to be involved."

The Court is of the opinion that it has no jurisdiction under either theory of plaintiff's case for the following reasons:

■ 1. Jurisdiction cannot rest on 42 U.S.C., Sec. 1983, because the School District was not subject to monetary damages under such section. *Monroe v. Pape,* 365 U.S. 167, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961); *City of Kenosha v. Bruno,* 412 U.S. 507, 93 S.Ct. 2222, 37 L.Ed.2d 109 (1973); *Campbell v. Masur,* 5 Cir., 486 F.2d 554 (1973).

■ 2. Jurisdiction cannot be predicated on the allegation that the cause of action arose under the Constitution and laws of the United States, because the matter in controversy did not exceed the sum of $10,-000.00, exclusive of interest and costs. 28 U.S.C., Sec. 1331. Neither can jurisdiction be maintained under 28 U.S.C., Sec. 1343(3), because a suit for monetary damages cannot be maintained against a quasi-municipal corporation to redress the alleged deprivation herein complained of.

■ The fact that the parties at one time agreed that the Court had jurisdiction of this case, or that jurisdiction was not disputed, did not confer jurisdiction over the subject matter where it did not actually exist. *American Fire & Cas. Co. v. Finn,* 341 U.S. 6, 17, 71 S.Ct. 534, 542, 95 L.Ed.2d

---

3. Quotation is from plaintiff's amended complaint.

702, 19 A.L.R.2d 738 (1951) [4]; *Warren G. Kleban Eng. Corp. v. Caldwell*, 5 Cir., 490 F.2d 800, 803 (1974); *Department of Highways of La. v. Morse Bros. & Associates*, 5 Cir., 211 F.2d 140 (1954); *Williams v. Rogers*, 8 Cir., 449 F.2d 513, 518 (1971), cert. den. 405 U.S. 926, 92 S.Ct. 976, 30 L.Ed.2d 799; *French v. Jeffries*, 7 Cir., 149 F.2d 555, 557 (1945). The court must notice lack of jurisdiction of its own motion at any time. *Warren G. Kleban Eng. Corp. v. Caldwell*, supra, at 802, fn. 1; *Scroggin Farms Corp. v. McFadden*, 8 Cir., 165 F.2d 10, 15 (1948); *Danning v. United States*, 9 Cir., 259 F.2d 305 (1958), cert. den. 359 U.S. 911, 79 S.Ct. 587, 3 L.Ed.2d 574. A federal court is under mandatory duty to dismiss when lack of jurisdiction appears. *Ward Baking Co. v. Holtzoff*, 2 Cir., 164 F.2d 34, 37 (1947).[5]

*Monroe v. Pape*, and *City of Kenosha v. Bruno*, both *supra*, hold that a municipal corporation is not a "person" under 42 U.S.C., Sec. 1983,[6] and that no action can be had against if for alleged deprivation of rights under such section. The syllabus summarizes the holding in the *City of Kenosha* case in the following language:

"1. A city is not a 'person' under 42 U.S.C. § 1983 where equitable relief is sought, any more than it is where damages are sought, *Monroe v. Pape*, 365 U.S. 167, 187, 81 S.Ct. 473, 484, 5 L.Ed.2d 492, and *the District Court, therefore, erred in concluding that it had jurisdiction over the complaints under 28 U.S.C. § 1343(3)* since only

the two municipalities were named as defendants." (Emphasis supplied).

■ A Texas school district is a quasimunicipality. *Love v. City of Dallas*, 120 Tex. 351, 40 S.W.2d 20; *Independent School District v. Central Education Agency*, Tex. Civ.App., 247 S.W.2d 597, 605, affirmed 152 Tex. 56, 254 S.W.2d 357. As such, it is not a "person" under 42 U.S.C., Sec. 1983, and it comes within the purview of the rules announced in *Monroe v. Pape, City of Kenosha v. Bruno,* and *Campbell v. Masur*, all *supra*. Jurisdiction of this action therefore cannot be maintained under 42 U.S.C., Sec. 1983 or 28 U.S.C., Sec. 1343(3).

The only remaining basis claimed for jurisdiction is 28 U.S.C., Sec. 1331(a), which provides:

"(a) The district courts shall have original jurisdiction of all civil actions wherein the matter in controversy exceeds the sum or value of $10,000.00 exclusive of interest and costs, and arises under the Constitution, laws or treaties of the United States."

Jurisdiction under Sec. 1331 fails because the matter in controversy does not exceed the sum or value of $10,000.00. As has already been shown, this suit was originally for only $3,890.00 actual damages. By amendment filed only a few days before the trial the amount of damages was increased to $11,850.00, but $3,000.00 of that was for exemplary damages.[7]

---

4. "It needs no citation of authorities to show that the mere consent of parties cannot confer upon a court of the United States the jurisdiction to hear and decide a case. If this were once conceded, the Federal Courts would become the common resort of persons who have no right, either under the Constitution or the laws of the United States, to litigate in those courts." Footnote 17, 341 U.S., at 17, 71 S.Ct., at 542.

5. ". . . [T]he district court must dismiss an action at any stage of the proceeding if satisfied that jurisdiction is lacking. . . ." 164 F.2d, at 37.

6. 42 U.S.C., Sec. 1983 provides:
"Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory, subjects, or causes to be subjected, any citizen of the United States or

other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress."

7. The only assertion of the claim for exemplary damages, beyond the allegations of the amended complaint praying for them, was the following statement in plaintiff's brief filed after the trial:
"Complainant Scott has prayed for exemplary or punitive damages because of the discriminatory law. In this regard, there is no evidence of malice having been introduced in this case. However, it is the Complainant's position that the Court consider the awarding as exemplary or punitive damages in such cause."

■ The general rule is that, in the absence of a statute so authorizing, exemplary damages cannot be recovered against a municipal corporation. *Ostrum v. City of San Antonio,* 33 Tex.Civ.App. 683, 77 S.W. 829, writ refused; *Town of Jacksonville v. Pinkard,* Tex.Civ.App., 40 S.W.2d 841, writ dis.; *City of Houston v. L. J. Fuller, Inc.,* Tex.Civ.App., 311 S.W.2d 285, no writ history; *Willis v. City of Lubbock,* Tex.Civ.App., 385 S.W.2d 617, writ ref., no reversible error; *Cole v. City of Houston,* Tex.Civ.App., 442 S.W.2d 445, no writ history; *Moody v. City of Galveston,* Tex.Civ.App., 524 S.W.2d 583, 590; *Fox v. City of West Palm Beach,* 5 Cir., 383 F.2d 189 (1967); *Euge v. Trantina,* 8 Cir., 422 F.2d 1070 (1970).

■ Some authorities have been heretofore cited in support of the principle that Texas school districts are quasi-municipal corporations. Additional cases following the rule are: *Lewis v. Independent School District of Austin,* 139 Tex. 83, 161 S.W.2d 450; *Independent School Dist. of El Paso v. Central Education Agency,* Tex.Civ.App., 247 S.W.2d 597, affirmed, 152 Tex. 56, 254 S.W.2d 357; *University Interscholastic League v. Midwestern University,* 152 Tex. 124, 255 S.W.2d 177; *Frost v. Fowlerton Consol. School Dist. No. 1,* Tex.Civ.App., 111 S.W.2d 754, no writ history; *Wilson v. City of Abilene Independent School District,* Tex.Civ.App., 190 S.W.2d 406, writ ref., want of merit. They are organized and are operated under the statutes of Texas as a subdivision of the State, performing its governmental function of educating its children by administering the system of pre-college public schools within their respective districts.[8]

Under the rule announced in the above cited cases, the plaintiff's allegations seeking to recover exemplary damages from the School District were a nullity. There was no possible basis for recovering such damages. The only other damages sought totalled only $8,850.00. Jurisdiction, then, cannot be maintained under 28 U.S.C., Sec. 1331. *Euge v. Trantina, supra,* at p. 1073 of 422 F.2d; *Newcastle Products, Inc. v. School District of Blair Township,* W.D.Pa., 18 F.Supp. 335 (1936).

Under the rules announced in *City of Kenosha v. Bruno, Euge v. Trantina,* and *Newcastle Products, Inc. v. School District,* all supra, the Court must dismiss this action for lack of jurisdiction.

This opinion will serve as the Court's findings of fact and conclusions of law. Rule 52(a), F.R.Civ.P.

An order will be entered in accordance herewith dismissing this action for lack of jurisdiction.

There was no allegation of malice; but exemplary damages cannot be recovered from a municipality whether there was malice or not.

8. The Supreme Court of Texas said in *Love v. City of Dallas, supra*:

"School districts are local public corporations of the same general character as municipal corporations. . . . They are defined as quasi-municipal corporations, and derive their powers from the state. They are state agencies, erected and employed for the purpose of administering the state's system of public schools. . . . ."